IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CINCINNATI INSURANCE CO,
*as subrogee of Richland Memorial Hospital, Inc.*
   Plaintiff,

vs.

TRI-STATE FIRE PROTECTION, INC.,

   Defendant.

Case No. 3:14-cv-86-JPG-PMF

**MEMORANDUM AND ORDER**

 This matter comes before the Court on the motion to dismiss filed by defendant Tri-State Fire Protection, Inc. ("Tri-State"). (Doc. 14). Plaintiff Cincinnati Insurance Co. has responded to the motion. (Doc. 19). For the following reasons, the Court will deny Defendant's motion to dismiss.

**I. Standard for Dismissal**

 When determining whether a complaint is sufficiently pled to survive a Rule 12(b)(6) motion to dismiss, the court must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the non-movants favor]." *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). A well-pleaded complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. Such a standard does not require a demonstration that the alleged action probably occurred, but it does require more than a "sheer possibility" that the

defendant acted unlawfully. *Ashcroft*, 556 U.S. at 678. A plaintiff must provide "only enough detail to give the defendant notice of what the claim is and the grounds upon which it rests, and through his allegations show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger*, 592 F.3d at 764 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

## II.     Facts and Procedural History

The facts, taken from Cincinnati's complaint, and the reasonable inferences that can be drawn from them are as follows. Cincinnati is the insurer and subrogee of Richland Memorial Hospital, Inc., based in Olney, Illinois. (Doc. 2). On March 13, 2009, Richland entered into a written contract with Tri-State to repair and modify the fire suppression system at the hospital. (Doc. 2-1). The agreement required Tri-State complete the work in accordance with National Fire Protection Association 13 (*Standard for the Installation of Sprinkler Systems (2013))*, state and local codes, and all specifications required by Richland. *Id.* The contract itself called for an extension of the existing fire sprinkler system. (Doc. 2-1). The existing system was also to be disconnected and reconnected to the new sprinkler piping areas. *Id.* Further, the system was to include black steel pipes for the exposed areas, along with pendent sprinklers for areas with finished ceilings and brass upright sprinklers for all exposed areas. *Id.* In sum, the new sprinkler system was to cover a single floor consisting of 38,376 square feet. *Id.*

The repairs and modifications began on October 20, 2009. (Doc. 2). During Tri-State's repairs and modifications one evening, "a fitting on the system failed, causing gallons of water to escape into the subject building and damage the structure, and personal property kept therein." *Id.* Initially, Richland did not discover the cause of the damage. *Id*. Indeed, it was only after an investigation that Cincinnati discovered that the pipe fitting failed due to Tri-State's

work. *Id*. After paying for the damage, Cincinnati seeks judgment for $293,246.35 it paid for repairs or replacements of the damaged or destroyed property, along with a deductible loss suffered by Richland for $2,500. Id.

Plaintiff filed this case against Tri-State in federal court alleging: negligence (Count I), breach of contract (Count II), and breach of express warranty (Count III). (Doc. 2). Plaintiff asserts diversity jurisdiction under 28 U.S.C. § 1332 (a). (Doc. 2). Thereafter, Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 15). Tri-state claims that the negligence, breach of contract, and breach of express warranty claims fail to state a claim for which relief can be granted because the claims are barred by the statute of limitations. (Doc. 15).

### III. Analysis

In their motion to dismiss, Tri-State argues the Cincinnati claims are barred because the initial agreement between them constituted an "improvement to real property." (Doc. 15). If Tri-State's work was an improvement to real property 735 ILCS 5/13-214(a) governs, and Cincinnati's claims are barred. On the other hand, Cincinnati argues that Tri-State's work was merely repair and replacement of the previous system and governed by a five-year period for negligence and breaches of an implied warranty (735 ILCS 5/13-205) or a 10-year period for breaches of written contracts (735 ILCS 5/13-206) allowing for a later filing deadline. (Doc. 19).

> a. *For the purposes of this motion the agreement entered into between Richland Memorial Hospital and Tri-State did not constitute an "improvement to real property" as understood in 735 ILCS 5/13-214(a).*

The language of 735 ILCS 5/13-214 (a) prescribes an "action based upon tort, contract or otherwise against any person for an act or omission of such person in the . . . construction of an

3

improvement to real property shall be commenced within 4 years from the time the person bringing an action knew or should reasonably have known of such act or admission." "Whether an item constitutes an improvement to real property is a question of law. Its resolution, however, is grounded in fact." *Ambrosia Land Investments, LLC v. Peabody Coal Co.,* 521 F.2d 778, 781 (7th Cir. 2008) (citing *St. Louis v. Rockwell Graphic Sys., Inc.,* 605 N.E.2d 555 (Ill. 1992)).

An "improvement" is "a valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings." *Ambroasia*, 521 F.2d at 781-82 (citing *Black's Law Dictionary* 682 (5th ed. 1979)).

In *St. Louis,* the Supreme Court of Illinois utilized four factors to determine what constitutes an "improvement to real property." Known as the *St. Louis* factors, these factors included (1) whether the addition was meant to be permanent or temporary; (2) whether it became an integral component of the overall system; (3) whether the value of the property was increased; and (4) whether the use of the property was enhanced. *St. Louis*, 605 N.E.2d at 556.

In *Ambrosia,* the Seventh Circuit used these factors to determine that a coal mine was an improvement to real property. *Ambroasia*, 521 F.2d at 781-2. Specifically, the court found that the mine—particularly the pillars—were intended to provide permanent support for the surface, and the mine was a valuable addition to the real property, hiking up the real estate value. *Id.* at 783-4.

The Northern District, in *Stanley,* applied these factors in greater depth. The court utilized the *St. Louis* factors in order to determine whether certain power plant owners and the general

contractor were negligent for plaintiff's exposure to asbestos dust and fibers while on the job. *Stanley,* 982 F. Supp. 2d at 847. The court determined that the general contractor's action of installing thermal insulation was an improvement to real property. *Id.* at 861. The "power plants are designed to include thermal insulation at all times and would not operate without it." *Id.* at 862. Further, this insulation made it possible for workers to be present within the plant and for equipment to survive in the presence of extreme heat. *Id.* Indeed, the act of not-insulating would be "extremely inefficient" from "both an economic standpoint and from an energy-production standpoint." *Id.* at 862-3. After review, the Court was satisfied that the facts fulfilled all the *St. Louis* criteria: "the insulation is meant to be permanent; it becomes an integral component of the overall system and it increases the value of the property and enhances the use." *Id.* at 862

Turning to the facts at bar, the Court must analyze whether Tri-State's construction on Richland Hospital, as described in the complaint, constitutes an "improvement to real property." As explained below, the Court finds it does not.

The installation of the sprinkler system was permanent. The Court can certainly infer that the installation of the sprinkler system, including the pipes along with the sprinkler heads, is considered a permanent fixture in the hospital as a whole. The contract itself clearly paints a broad and in-depth process of the installation of a sprinkler system. (Doc. 2-1). The construction was completed by disconnecting and connecting water supplies and reconnecting them to newly designated waterlines. (Doc. 2). The supplies included black steel, pendent sprinklers and brass upright sprinklers. (Doc. 2-1). The use of these specific materials does not seem to indicate a temporary structure, but one that was intended to last many years comparable to the insulation in *Stanley* and the pillars in *Ambrosia*.

Second, the sprinkler system was an integral component of the overall existent system.

The job required installation of new pipes intended to encompass the entirety of the first floor, precisely 38,376 square feet. (Doc. 2-1). The contract also required Tri-State to connect the new addition to the older system to work as a single unit. (Doc. 2-1). This new system was to work as a fire suppression system for the entire first floor which is approximately 38,000 square feet. (Doc. 2-1). From these facts, it is evident that Tri-State's construction was integral to the sprinkler system as a whole.

Proceeding, there are too few facts pled to infer that the installation of the sprinkler system increased the property value. The pleadings did not contain any reason for the installation of a partially new sprinkler system. (Doc. 2). For that reason, the inference cannot be drawn that the newer system was any more or less valuable than the one that preceded it.

Lastly, the Court cannot determine that the sprinkler addition enhanced the property. As explained above, there is no indication in the complaint that the previous system was out-of-date, in desperate need of refurbishment, or even old. Instead, the Court can only deduce that Richland wanted a new sprinkler system. Since no more than that understanding is present in the pleadings, the Court cannot determine whether the new sprinkler system enhanced the property.

Therefore, the Court cannot say based on the facts in the complaint that Tri-State's work was an improvement to real property.

  b. *Even if* 735 ILCS 5/13-214 (a) *did apply to the work done by Tri-State, Cincinnati or Richland did not know about the cause of the accident until after an investigation*.

Tri-State argues that the date the damage occurred, October 20, 2009, is a drop dead date in which the plaintiff should have known or been put on notice of the cause of the damage. (Doc. 15). On the other hand, Cincinnati argues that they did not know the cause of the damage until a later date after an investigation. (Doc. 2).

6

The law of Illinois explains that "[w]hen the discovery rule is applied, it 'delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Hermitage Corp v. Contractors Adjustment Co.,* 651 N.E.2d 1132, 1135 (Ill. 1995)(citing *Jackson Jordan, Inc. v. Leydig, Voit & Mayer,* 633 N.E.2d 627, 631 (Ill. 1994)). According to the Supreme Court of Illinois, "[a]t some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period commences." *Knox College v. Celotex Corp*, 430 N.E.2d 976, 980-81 (Ill. 1981).

Turning to the particular facts, the only inference drawn from the complaint is that the water damage occurred on October 20, 2009, and Cincinnati determined the cause of the damage at a later date, after an investigation. (Doc. 2). There are no facts in the complaint showing that Richland or Cincinnati possessed sufficient information concerning their injury causing them to be put on notice of Tri-State's negligent action on the October 20, 2009 date. Since all inferences are to be held in the light most favorable to the non-moving party, the court cannot agree that the discovery rule applies.

Given these conclusions, the Court cannot say that Richland or Cincinnati knew or had reason to know of Tri-State's negligence in causing the water damage on October 20, 2009. Thus, the statute of limitations began to accrue at a later date.

### IV. Conclusion

In sum, although two of the *St. Louis* factors were fulfilled, the two remaining factors

remain an unknown. The installation of a new fire suppression system was permanent and an integral part of the existing system; however, the Court is unable to infer whether or not the work improved the property's value or enhanced the property. Viewing these unknowns in a light favorable to the Plaintiff (non-moving party), the Court cannot say that the work done by Tri-State constituted an "improvement to real property." Further, even if 735 ILCS 5/13-214 (a) governs the work, Tri-State has still failed to show that Cincinnati or Richland should have known of the damage on October 20, 2009. Thus, Cincinnati is not barred from filing because on statute of limitation grounds.

The Defendant may present further evidence in support of these arguments at the summary judgment stage, or at trial. Thus, the Defendant's motion to dismiss (Doc. 14) is **DENIED**.

**IT IS SO ORDERED**
**Dated: July 23, 2014**

                                                s/J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**