IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CINCINNATI INSURANCE CO, as subrogee of Richland Memorial Hospital, Inc., <br><br> Plaintiff, <br><br> v. <br><br> TRI-STATE FIRE PROTECTION, INC., <br><br> Defendant. | Case No. 3:14-cv-86-JPG-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendant Tri-State Fire Protection, Inc. ("Tri-State") (Doc. 42). Plaintiff Cincinnati Insurance Co. ("Cincinnati") has responded to the motion. (Doc. 43), and Tri-State has replied to that response (Doc. 46).

**I.      Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.  If the moving party bears the burden of persuasion on an issue at trial, he must present evidence that conclusively establishes he is entitled to a judgment as a matter of law and that no reasonable jury could find for the opposing party.

II.    **Facts and Procedural History**

Viewed in the light most favorable to Cincinnati, the relevant evidence and the reasonable inferences that can be drawn from that evidence establish the following facts.

Cincinnati is the insurer of Richland Memorial Hospital, Inc. ("RMH"), based in Olney, Illinois. In early 2009, RMH contracted with Tri-State to install a new sprinkler system on the first floor of the RMH facility at a cost of approximately $100,000. The new sprinkler system was to be part of an expansion of RMH's existing fire suppression system. At that point, more than half of the first floor – approximately 38,376 square feet – was not protected by such a system ("unsprinkled," in the industry argot), and Tri-State's work would hook new pipes, pendant sprinklers and upright sprinklers into the existing sprinkler system to cover the unsprinkled area. The area to be newly sprinkled included parts of RMC's out-patient clinic, laboratory, emergency room, office areas and same-day surgery patient rooms. At the conclusion of Tri-States work, the entire first floor of RMH's facility would be sprinkled, making the building safer than it had been before. No change in activities occurred in the newly sprinkled area after the sprinkler installation, and neither Michael Stoverink, RMH's chief financial officer, nor Les Harrison, RMH's director of plant services, could testify that the new sprinkler system added value to RMH's facility.

On October 20, 2009, Harrison inspected the area in which Tri-State was to be working that day and spoke to a Tri-State employee about that work. At some time that day, the old sprinkler system was shut off to permit Tri-State to finish its work and was then turned back on before Harrison left for the day.

Later that evening, Harrison returned to the RMH facility after being notified by a security guard of a major water leak from a sprinkler line. Harrison was quickly able to identify

the source of the leak as the area where Tri-State had been working earlier in the day. He saw that a glue joint had failed and that a pipe had separated from a fitting. He also knew that a Tri-State employee was the only person who had worked on the glue joint that day.

Cincinnati paid RMH's insurance claim for the damage caused by the leak and on January 24, 2014, filed this lawsuit against Tri-State as RMH's subrogee. Cincinnati alleges causes of action for negligence, breach of contract and breach of express warranty. Tri-State moved to dismiss the case on the grounds that it was filed beyond the four-year statute of limitations for actions concerning "construction of an improvement to real property." *See* 735 ILCS 5/13-214(a). The Court denied the motion because the allegations in Cincinnati's complaint did not plead sufficient facts to plausibly suggest that Tri-State's work constituted an "improvement" (Doc. 26). Tri-State raises the limitations issue again in this motion for summary judgment, and Cincinnati continues to argue that a longer limitations period applies or, alternatively, that the limitations period did not begin to run on October 20, 2009.

### III. Analysis

#### A. Limitations Period

As the Court noted in its order denying Tri-State's motion to dismiss, if Tri-State's work constituted "construction of an improvement to real property," it is governed by the four-year statute of limitations set forth in 735 ILCS 5/13-214(a), which states:

> Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the . . . construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action knew or should reasonably have known of such act or omission.

Whether an item is an "improvement to real property" is a question of law, although it is a conclusion grounded in fact. *Ambrosia Land Investments, LLC v. Peabody Coal Co.,* 521 F.3d 778, 781 (7th Cir. 2008) (citing *St. Louis v. Rockwell Graphic Sys., Inc.,* 605 N.E.2d 555, 556

(Ill. 1992)). Because the Court is exercising diversity jurisdiction, it applies Illinois substantive law to determine what constitutes an "improvement to real property." *Ambrosia*, 521 F.3d at 781.

In *St. Louis*, the Illinois Supreme Court adopted Black's Law Dictionary's definition of an "improvement" as "a valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes," *Black's Law Dictionary* 682 (5th ed. 1979). *St. Louis*, 605 N.E.2d at 556; *Ambrosia*, 521 F.3d at 781-82. The *St. Louis* court stated that the relevant criteria to decide what constitutes an "improvement to real property" include (1) whether the addition was meant to be permanent or temporary; (2) whether it became an integral component of the overall system; (3) whether the value of the property was increased; and (4) whether the use of the property was enhanced. *St. Louis*, 605 N.E.2d at 556.

In the Court's order denying Tri-State's motion to dismiss, the Court found that, as pled, the installation of the sprinkler system at RMH's facility was meant to be permanent and an integral component of the fire suppression system of the building as a whole. The parties therefore focus on the last two factors listed in *St. Louis* – whether the addition of the sprinkler system increased the value of the property and whether the use of the property was enhanced.

In its prior order, the Court noted that the pleadings did not say enough to establish that the installation of the sprinkler system increased the property value or enhanced the property's use. For example, if the new system had replaced a well-functioning older system, the property would not necessarily have been worth more than before its installation or used more, better or differently than it had been in the past.

Now that this case is at the summary judgment stage, the Court looks at the evidence, not just the pleadings. The evidence in the record makes clear that the installation of the new system added sprinklers to approximately 38,376 square feet of RMH's facility, more than half of the first floor, that did not have sprinklers before. While Cincinnati argues that there was no testimony that the value of the facility was increased by the addition of the sprinkler system, the Court finds that no reasonable jury could find that the addition of a sprinkler system costing approximately $100,000 to a previously unsprinkled area in a hospital facility did not increase the value of the facility. The safety of a substantial area of the facility was increased, which could only have made the facility more valuable. It is not necessary to have an affirmative statement that the value increased, for it is common sense that, all other things being equal, a building is more valuable if it is made safer by adding additional fire suppression equipment.

The evidence also makes clear that the installation of the new sprinkler system would allow RMH to suppress fires with sprinklers in more than half of its first floor where it had previously been unable to do so. While the addition of the sprinkler system might not have allowed any new activities to occur in the newly sprinkled area on a daily basis, it certainly enhanced the facility's use by enabling RMH to suppress fires better than before. In that sense, the building's use has been enhanced. Despite Stoverink's and Harrison's conclusory affidavit statements that the sprinkler system did not enhance the use of the hospital, the Court believes no reasonable jury could find that the fire suppression benefit conveyed by the new sprinkler system did not enhance the use of RMH's facility.

All of these *St. Louis* factors weigh, some more strongly than others, in favor of finding the sprinkler system installed by Tri-State was an improvement to RMH's facility. Indeed, getting back to the Illinois Supreme Court's definition of "improvement," the sprinkler system

seems to qualify easily. It was "an amelioration" in the condition of the facility by making it better able to combat fires. The installation was "more than mere repairs or replacement" of an existing system but was an addition to previously unsprinkled areas. It cost a substantial sum of money, and was intended to make the facility safer than it was before, which by nature enhanced its value and utility.

For these reasons, the Court finds that Tri-State's installation of the sprinkler system at the RMH facility was an "improvement to real property" and that, as a consequence, the four-year statute of limitations in 735 ILCS 5/13-214(a) applies.

B.    Accrual of Cause of Action

The Court now turns to the question of when the four-year statute of limitations began to run. The statute indicates the four years begins to run "from the time the person bringing an action knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214(a). This discovery rule "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Jackson Jordan, Inc. v. Leydig, Voit & Mayer,* 633 N.E.2d 627, 631 (Ill. 1994). "[W]hen a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 868 (Ill. 1981). Knowing that an injury was wrongfully caused does not mean the injured party needs to know it has a cause of action against a specific defendant for causing the injury. *Knox College v. Celotex Corp*, 430 N.E.2d 976, 980 (Ill. 1981).

The evidence in the record demonstrates RMH knew or should have known on October 20, 2009, that it had been injured by a water leak and that the injury was wrongfully caused by a

malfunction in or related to the newly performed work by Tri-State. Harrison believed on the evening of October 20, 2009, when he was called back to the RMH facility that the water leak had been caused by a failure of a glue joint in the area where Tri-State, and only Tri-State, had been working that day. This was sufficient to create an obligation for RMH to inquire whether it might have a cause of action against Tri-State based on its negligence or delinquent work. Consequently, the four-year statute of limitations began to run on October 20, 2009, and any cause of action based on Tri-State's installation of the new sprinkler system must have been filed on or before October 20, 2013. Cincinnati did not file suit until January 24, 2014, so it is time-barred.

## IV. Conclusion

For the foregoing reasons, the Court finds that Cincinnati filed this lawsuit beyond the applicable four-year statute of limitations found in 735 ILCS 5/13-214(a) and that this suit is time-barred. Therefore, the Court **GRANTS** Tri-State's motion for summary judgment (Doc. 42) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED**
**Dated: February 9, 2016**

                                             s/ J. Phil Gilbert
                                             **J. PHIL GILBERT**
                                             **DISTRICT JUDGE**